# United States District Court

## SOUTHERN DISTRICT OF INDIANA

UNITED STATES OF AMERICA

V.

MIGUEL ANGEL ARPERO-LOYA

**CRIMINAL COMPLAINT**

CASE NUMBER: 1:16-mj-195

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.
Beginning at a date unknown, continuing up to and including March 15, 2016, in the Southern District of Indiana and elsewhere, defendant Miguel Angel Arpero-Loya, did knowingly conspire with diverse other persons, known and unknown, to possess with intent to distribute and to distribute 100 kilograms or more of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

I further state that I am a Special Agent with the U.S. Immigration and Customs Enforcement, and that this complaint is based on the following facts:

See attached Affidavit

**Continued on the attached sheet and made a part hereof.**

Jason C. Rodriguez,
Special Agent,
U.S. Immigration and Customs Enforcement
Homeland Security Investigations

Sworn to before me, and subscribed in my presence

March 18, 2016                                    at    Indianapolis, Indiana
**Date**

Debra McVicker Lynch, U.S. Magistrate Judge
**Name and Title of Judicial Officer**                   **Signature of Judicial Officer**

Jason Rodriguez, Special Agent, U.S. Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), being duly sworn under oath states as follows:

## I. INTRODUCTION

Your Affiant is assigned to the Indianapolis, Indiana, Office of the United States Department of Homeland Security (DHS), Homeland Security Investigations (HSI) as a Special Agent. I have been a Special Agent with HSI and its predecessor, the United States Immigration and Naturalization Service, since April, 2000. As a part of my HSI duties, I am responsible for investigating criminal violations such as conspiracy to distribute and to possess with intent to distribute controlled substances, distribution of controlled substances, and possession with the intent to distribute controlled substances, in violation of Title 21, United States Code, Sections 846 and 841(a)(1), as well as importation of controlled substances in violation of Title 21, United States Code, Section 952 et seq. I have personally participated in narcotics investigations. I have been involved in various types of electronic surveillance, and in the debriefing of defendants, witnesses and informants, as well as others who have knowledge of the distribution and transportation of controlled substance and of the laundering and concealing of proceeds from drug trafficking in violation of Title 18, U.S.C. § 1956 et seq. I have received training in investigations involving transporting and distributing marijuana. I am familiar with the ways in which drug traffickers conduct their business, including, but not limited to their methods of importing and distributing controlled substances, their use of telephones, and their use of numerical codes and code words to conduct their transactions. I am familiar with and have participated in all of the normal methods of investigation, including, but not limited to visual surveillance, the general questioning of witnesses, the use of informants, the use of pen registers,

1

the execution of search warrants, and undercover operations.

1. The information contained in this affidavit is either personally known to me, or was told to me by the individuals described below and as it is presented for the purpose of establishing probable cause, may not contain all facts known to law enforcement. This Affidavit is being submitted in support of a criminal complaint for Miguel Angel ARPERO-Loya (ARPERO), charging him with possession with intent to distribute 100 kilograms or more of marijuana, a Schedule I, Non-Narcotic, Controlled Substance, and conspiracy to do the same, all in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

## II. FACTS AND CIRCUMSTANCES

<u>March 14, 2016 Traffic Stop of ARPERO</u>

2. On March 14, 2016, at approximately 11:16 p.m., Officer Roa, of the Indianapolis Metropolitan Police Department (IMPD), conducted a traffic stop on a 2008 black Dodge Nitro, Texas plate FCC7712, near mile marker 69 on eastbound Interstate 70, after he observed the vehicle make an illegal lane change.

3. The driver and only occupant of the black 2008 Dodge Nitro identified himself as Miguel Angel Arpero by Texas Driver License, with a place of residence in Terrell, Texas. ARPERO told Officer Roa he made the lane change without signaling because he was tired, due to the long drive from Texas.

4. During the course of the traffic stop, ARPERO further stated he was traveling to Indianapolis, Indiana to work construction/roofing with his brother who lives in Dallas, Texas and that he was going to stay the night at a hotel or truck stop on the west side of Indianapolis, Indiana.

5. ARPERO was previously known to me through my investigation of a marijuana distribution organization operating in Mexico, Texas, and Indiana. Through previous investigation, I believed that ARPERO was a leader of this organization, and was responsible for overseeing the shipment of large quantities of marijuana from Juarez, Mexico to Indianapolis, Indiana, as well as other locations within the United States. ARPERO was initially identified as such by an individual who was stopped at the United States/Mexico international border in early 2009. This individual was interviewed by Homeland Security Investigations (HSI) after he/she applied for admission to the United States from Mexico. During this interview, the individual understood that Miguel Angel Arpero-Loya (ARPERO) was the leader of the DTO in Dallas, Texas who was receiving shipments of marijuana from Mexico and sending the proceeds from the sales of the marijuana to Juarez, Mexico.

6. Upon being informed of this traffic stop, and as set forth in more detail below, other HSI agents and I began surveilling ARPERO to determine whether his activities in Indianapolis were related to his marijuana trafficking.

March 15, 2016 Stop of Russell David Rothe

7. On March 15, 2016, at approximately 8:50 a.m., Trooper Hogan, of the Illinois State Police, conducted a traffic stop on a 2015 white Dodge Ram pick-up pulling a black Big-T flatbed trailer, which contained ten semi-tires. This traffic stop occurred on eastbound interstate 70, after the trooper observed the Ram pick-up traveling too closely to the vehicle in front of it.

8. The driver and only occupant of the white 2015 Dodge Ram pick-up identified himself as Russell David Rothe (Rothe) by Texas Driver License, with a place of residence in Dallas, Texas. During the course of the traffic stop, at approximately 9:00 a.m., an Illinois

3

Trooper, a trained K-9 handler, utilized his K-9 partner "Neko" to conduct a sniff of the free air around the unoccupied 2015 white Dodge Ram pick-up and 2016 black Big-T flatbed trailer. K-9 "Neko," who is trained in the detection of the odor of various controlled substances, including marijuana, and who has been most recently certified as a narcotics detection .dog in November 2015, alerted on the 2016 black Big-T flatbed trailer for the presence of the odor of controlled substances. A search of the vehicle revealed approximately 680 pounds of marijuana, which had been secreted within the semi-tires.

9. After the K9 alert, Rothe was interviewed after Rothe waived his *Miranda* rights. During this interview, Rothe told Troopers that he had made three previous trips to the Indianapolis, Indiana area, where he would drop of his vehicle and trailer at a predetermined location to an unknown Hispanic male. The unknown Hispanic male would return Rothe's vehicle and trailer several hours later with semi-tires after the marijuana was removed from the tires. Rothe further stated he was previously paid $5,000.00 for the trip and $500.00 for related travel expenses. Rothe agreed with the Illinois State Police to cooperate by assisting in a controlled delivery of the marijuana to Indianapolis, Indiana. A search of the vehicle at the office of HSI Indianapolis, revealed approximately 680 pounds of marijuana, which had been secreted within the semi-tires.

Delivery of the Marijuana Laden Vehicle to Indianapolis

10. At approximately 10:20 a.m., HSI surveillance officers located ARPERO's 2008 black Dodge Nitro at the Quality Inn Hotel, located at 4502 South Harding Street, Indianapolis, Indiana. At approximately 10:30 a.m., surveillance officers observed a Hispanic male (later identified as ARERO), walked out of the Quality Inn Hotel pulling a roller type suitcase and

4

talking on his cellular telephone.

11. ARPERO was then observed departing the Quality Inn Hotel in his 2008 black Dodge Nitro, and was followed as he traveled westbound on Interstate 465. ARPERO traveled to the Carniceria Guanijuato grocery store at 5210 West Pike Plaza Road, Indianapolis, Indiana. ARPERO was then observed traveling to the Orantes Tire and Auto Repair at 4014 West Washington Street, Indianapolis, Indiana.

12. Officers continued to surveil ARPERO, and he was seen leaving the Orantes Tire and Auto Repair Shop and traveled to the La Parada restaurant at 1642 East New York Street, Indianapolis, Indiana.

13. At approximately 1:40 p.m. on March 15, 2016, ARPERO was picked up by a Hispanic male (later determined to be Ivan Reyna) driving a 2004 black Porsche. The Porsche was followed as it traveled to a residence at 514 North Jefferson, Indianapolis, Indiana. The occupants of the Porsche were seen entering the residence, and they did not return to the vehicle until approximately 3:37 p.m. Upon exiting the residence, ARPERO was seen carrying a brown paper bag. ARPERO and Reyna then left 514 North Jefferson, and were followed by surveillance officers as the Porsche traveled to the 3700 block of East Washington Street.

14. Upon arriving in the vicinity of the 3700 block of East Washington Street, the Porsche was observed circling near the O'Reilly Auto Parts Store located at 3715 East Washington Street. The occupants of the Porsche ultimately parked at the 100 block of North Kealing Avenue. From that parking spot, the occupants of the Porsche were capable of observing the O'Reilly Auto Parts Store.

15. After sitting in the parking spot near O'Reilly Auto Parts for more than an hour,

ARPERO and Ivan Reyna traveled in the Porsche back to 514 North Jefferson. In so doing, surveillance officers noted that the driver, Ivan Reyna, appeared to travel in a circuitous route, which I believe was likely done to determine whether they were under any law enforcement scrutiny.

16. Upon arriving at 514 North Jefferson at approximately 5:15 p.m. on March 15, 2016, Ivan Reyna and ARPERO entered the residence; a few minutes later, ARPERO left the residence in a red Audi. ARPERO was surveilled traveling to the La Parada (where he had been seen at earlier in the day, and where his black Dodge Nitro was still parked); ARPERO parked in the La Parada parking lot at approximately 5:20 p.m., stayed in the red Audi, and then departed the parking lot (still in the red Audi) at approximately 5:30 p.m.

17. Surveillance officers continued to follow ARPERO as he went to the area of the O'Reilly Auto Parts Store, where he parked the red Audi on the southwest end of the lot. Within a few minutes, surveillance officers observed Rothe arriving in the parking lot, driving the marijuana laden Dodge Ram and flatbed trailer.

18. Upon parking the marijuana laden Dodge Ram, another vehicle pulled up next to the Dodge Ram. Rothe was then observed handing keys to another individual in the newly arrived vehicle. This individual was then seen driving the marijuana laden Dodge Ram away from the parking lot. After the individual took Rothe's Dodge Ram, Rothe walked back to a predetermined meet location where law enforcement were waiting for him.

19. The Dodge Ram was followed to a residence in Acton, Indiana. Upon arriving at the residence, the driver was met by another individual, and the two began offloading the semi-tires. They were then arrested by law enforcement officers. One of the arrested individuals

agreed to cooperate with law enforcement, and that individual, at the direction and control of law enforcement, returned the Dodge Ram to the O'Reilly Auto Parts parking lot at approximately 7:20 p.m. Upon arriving, Rothe, who had been returned to the O'Reilly Auto Parts parking lot, took custody of the Dodge Ram.

20. Officers had maintained surveillance of ARPERO from the point that the individual picked up the Dodge Ram at O'Reilly Auto Parts at approximately 5:45 p.m. until the Dodge was returned to the O'Reilly parking lot at approximately 7:20 p.m. During this period, ARPERO had only left the parking lot for a short time, to drive briefly away from the parking lot, and then return. Based on my training and experience, I believe ARPERO was likely checking for law enforcement scrutiny.

21. After Rothe took custody of the Dodge Ram at approximately 7:20 p.m., Rothe then walked over to the red Audi that ARPERO was still sitting in, and Rothe was seen getting into the front passenger seat. After a couple of minutes, Rothe got out of the vehicle, and ARPERO drove away from the parking lot. A law enforcement officer who debriefed Rothe following this meeting indicated that Rothe told the officer that, while in the red Audi, ARPERO told Rothe to follow ARPERO from the parking lot to another location.

22. ARPERO was followed as he left the parking lot, and was arrested a short time later. Found in ARPERO's vehicle was the brown paper bag ARPERO had been seen carrying out of 514 North Jefferson; the bag contained $20,000 in U.S. Currency. During the search of the vehicle and ARPERO's person, officers found another $6,103 in U.S. Currency. Officers also seized a white iPhone 5S, and a black Alcatel flip phone.

Text Messages Between ARPERO and Rothe

23.  State search warrants were obtained and executed for the phones found in the possession of ARPERO and Rothe. I have reviewed the results of these searches, which are summarized below.

24.  ARPERO's phone and Rothe's phone were in contact, by both voice and text messaging, numerous times between March 12, 2016 and March 15, 2016.

25.  I have reviewed some of the text messages between ARPERO and Rothe's phones. They demonstrate multiple text messages between Arch 12, 2016 and March 14, 2016. For example, on March 12, 2016, Rothe's phone received the following message from ARPERO's phone: "Are you ready for tomorrow." In another message on March 12, 2016, ARPERO's phone sent Rothe's phone the following text: "I will arrive about 1PM tomorrow." Rothe's phone responded, "OK."

26.  On March 13, 2016, ARPERO sent a message to Rothe as follows: "Work will be ready tonight but it's better to leave tomorrow." Rothe responded: "Ok good thanks."

8

## III. CONCLUSION

27. Based on my training and experience, I believe that ARPERO conspired to conduct the delivery of more than 100 kilograms of marijuana, as set forth above.

Jason C. Rodriguez
Special Agent
U.S. Immigration and Customs Enforcement
Homeland Security Investigations

Signed and subscribed to before me
on this 18th day of March, 2016

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

9